**ORIGINAL**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

**FILED**
**AUG - 4 2016**
U.S. COURT OF
FEDERAL CLAIMS

KDH DEFENSE SYSTEMS, INC.

    Plaintiff

vs.

THE UNITED STATES OF AMERICA

    Defendant.

Case No:

Judge: **16-941 C**

## COMPLAINT

Plaintiff, KDH DEFENSE SYSTEMS, INC. (herein "KDH") for its Complaint against the Defendant alleges as follows:

### THE PARTIES

1. Plaintiff, KDH Defense Systems, Inc., (herein "KDH") is a North Carolina corporation with its principal place of business at 750A Fieldcrest Road, Eden, NC 27288.

2. Defendant, is the United States of America, who through its agents and pursuant to law engages in various acquisition activities to support its operations and who has acted through the Defense Logistics Agency as is more fully set forth herein.

### JURISDICTION

3. This action is within the jurisdiction of this court by virtue of the provisions of the Federal Courts Improvements Act, 28 U.S.C. 1491(a)(1) and (3), in that it involves a solicitation for offers issued by the Department of Defense through the field activity of the Defense Logistics Agency known as the Defense Logistics Agency - Troop Support (herein "DLATS" or the "agency") and in that this is an action

challenging the conduct of a procurement, as is more fully set forth herein. Plaintiff understands that Defendants may be contemplating an award under Solicitation number SPE1C1-16-R-0002 to an offeror other than Plaintiff.

## FACTUAL BACKGROUND

4. On or about November 13, 2015 DLATS issued Solicitation number SPE1C1-16-R-0002 (herein the "Solicitation") for the supply and delivery of the Improved Outer Tactical Vest (IOTV), Generation IV. This is a new product being procured for the first time by the agency. The procurement was issued on an IDIQ basis for a base year and three option years. The procurement had annual minimum and maximum order limitations of 15,000 to 75,000 units for the base year, 10,000 to 50,000 units for the first option year and 6,000 to 30,000 units for the second and third option years. The Solicitation was issued as a small business set-aside and provided that it would be conducted on a best value basis with price being significantly less important than the technical factors for evaluation. The requirement is not classified as urgent. The Contracting Officer for said Solicitation is Mark Twardziak. A copy of said Solicitation is attached hereto as Exhibit 1.

5. KDH timely submitted two proposals under the Solicitation.

6. KDH was advised by letter dated March 24, 2016 that its offers were being rejected and that it would no longer be considered for award. See copy of letter dated March 24, 2016 attached hereto at Exhibit 2. KDH timely requested a preaward debriefing concerning the agency's action. A debriefing was provided by telephone on March 29, 2016.

7. The reasons for the rejection of the KDH offer stated in the March 24, 2016 letter and which were reiterated at the debriefing were that the KDH offer allegedly failed to submit a complete ballistic data package with its offer. Specifically, the agency in the March 24, 2016 letter and at the debriefing indicated

that the KDH ballistic data provided with its proposals "failed to meet the complete ballistic requirements for FAT [First Article Testing] found under specification FQ/PD 07/05H" in that the ballistic data provided by KDH with its offers was allegedly deficient because only 10-12 shots were taken in performing the VsVr test and some of the test reports indicated that an aluminum shield was present when the VsVr tests were performed. (KDH submitted two proposals and both were rejected for the same reasons.)

8. KDH disputes the conclusions reached by the agency and the agency's exclusion of its proposals from further consideration under the procurement.

9. The solicitation requires that "passing ballistic test results" have to be submitted with the proposal. See solicitation at P. 62. The solicitation further indicates that "the results shall demonstrate the offerors [sic] ability to meet the complete ballistic requirements for FAT found under FQ/PD 07/05H" See solicitation at Exhibit 2 at page 62. Section M of the solicitation provides: "Note: Passing ballistic test results must meet the performance requirements of Purchase Description FQ/PD 07-05H in order to be eligible for award. Failure to submit passing test results at time of initial closing shall result in the rejection of your entire proposal." See solicitation at P. 64.

10. The solicitation actually does not require that a "complete ballistic data package" be provided. It requires only that "passing ballistic test results" for FAT requirements be submitted with the proposal.

11. The Purchase Description (PD) FQ/PD 07-05H contains numerous ballistic requirements. See PD at Exhibit 3. There is no performance requirement for the VsVr test in the PD. There is no "passing" requirement for the VsVr test in the PD. The PD provides at paragraph 4.1 that First Articles must be examined for design (4.6), compatibility etc (4.7) and ballistic data for all test conditions ... in paragraphs 4.9 and 4.10. See PD at P. 27. The PD sets forth the ballistic requirements and verifications required at

paragraph 4.4 and Table XI therein. For ballistics, the requirements are for fragmentation protection (paragraphs 3.7.1 and 4.10) and handgun protection (paragraphs 3.7.2 and 4.10). See PD at Pp. 28-29. Fragmentation and handgun protection requirements at paragraphs 3.7.1 and 3.7.2 refer only to the V50 requirements. See PD at Tables VII and VIII at pages 22-23. Paragraph 4.10.8 is for the VsVr testing. It is specific that it is included "For Government Reference Only". It provides that it shall be conducted in the same manner as the section 4.10.7 V50 ballistic limit calculation. See PD at P. 40.

12. Paragraph 4.10.7 is the required FAT test for C (complete) and P (partial) penetration determination for V50. The V50 ballistic limit calculation is set forth at paragraph 4.10.7. This provides that in performing the test a 3 x 3 shot or a 5 x 5 shot average depending on distance may be used or alternatively a regression analysis or a partial 7 rule data reporting may be used to report the test results. There is a reference to 14 shots for the regression analysis method in the paragraph, but no indication that any shots over the 6 or 10 shots for the 3 x 3 or 5 x 5 average are required if the 6 or 10 shots yield acceptable data.

13. Accept/Reject criteria for FAT are contained at paragraph 4.11.1 of the PD. See PD at P. 45. Ballistic test requirements for FAT are set forth at paragraph 4.11.2. The VsVr testing referenced in the Table only sets forth the quantity of packs to be tested. No level of required test results is included.

14. The ballistic test requirements are set forth at paragraph 4.12.2. The VsVr test is not included in the requirements which is the only place where passing requirements for the ballistic tests are set forth in the PD. See PD at page 47. There is no pass/fail requirement in the PD for the VsVr test. The VsVr test is performed strictly for Government Reference information gathering purposes.

15. KDH provided a complete set of ballistic test results. The KDH ballistic test results indicated that the KDH product fully passed the V50 test. The KDH test results indicated that the VsVr test

was performed in accordance with the V50 test requirements. The results of those tests were included in the KDH test data provided with its proposals.

16. The solicitation only requires that: "Passing ballistic test results must meet the performance requirements of Purchase Description FQ/PD 07-05H in order to be eligible for award". The performance requirements of the PD do not include the VsVr test. Furthermore, there is no "passing" requirement or "passing" definition for the VsVr test.

17. KDH used the services of the HP White Laboratory to perform the ballistic testing for the KDH proposed IOTV's. HP White Laboratory is a certified ballistics laboratory that is deemed to be acceptable by the United States Government. HP White Laboratory has performed the ballistics tests prescribed by the PD on numerous occasions including the VsVr test. HP White Laboratory advises that it conducted the VsVr test in the same manner as it has always conducted the test and it has never had the Government raise any concern with its methodology concerning that test before.

18. After being advised by KDH of the reasons given for the rejection of the KDH proposals, HP White Laboratory advised KDH that in fact the aluminum shield was not used when the VsVr test was performed. HP White Laboratory has provided a letter concerning that matter to KDH. KDH informed the agency of this circumstance. A copy of HP White Laboratory's letter is attached hereto at Exhibit 4.

19. KDH filed a protest action with the Government Accountability Office concerning this procurement and the agency's exclusion of its offers from consideration thereunder. The GAO bid protest action was docketed as B-412951. A copy of said decision is attached at Exhibit 5. The GAO decision turns only on the erroneous test reports which indicated that in some instances an aluminum shield had been used when the VsVr test was performed when in fact it had not been so used. The GAO decision does not turn

on whether the agency's application of the VsVr test was appropriate under the terms of the solicitation and the applicable PD.

20. KDH has learned subsequent to the receipt of the GAO decision in this matter that the cognizant activity within the Department of Defense for determining ballistic requirements for items such as the IOTV was not aware that DLATS had made the VsVr test an element of evaluation for this - or indeed any - procurement and that it is the position of said activity that the VsVr procedure is performed only for information gathering purposes, should not be used for any evaluation purposes for award decision or for first article or lot acceptance, does not have any pass or fail criteria.

21. KDH's offers were improperly excluded from consideration in that the agency should not have considered the VsVr test at all in the evaluation process because: 1) it was never intended to be an element of evaluation for anything; 2) it is not a first article test requirement for acceptance purposes; 3) it has no pass/fail standard; and 4) it is for information gathering purposes only.

## ISSUES PRESENTED

22. Given the fact that GAO has not addressed the applicability of the VsVr test to the evaluation criteria of the solicitation, KDH believes that the issues raised by its protest have not been mooted by the GAO decision and that therefore the agency is continuing improperly to exclude its offers from consideration under the procurement.

23. The VsVr test is not a proper consideration for evaluation under the terms of the solicitation. The VsVr test is does not have a pass/fail standard and the VsVr test is not applicable to First Article or Lot acceptance.

24.  The agency improperly included references to the VsVr test for the purposes of evaluation of offers. The VsVr test has no applicable standards for evaluation and is not intended to be used for any evaluation purposes.

25.  The VsVr test may be subject to significant changes and therefore also should not be used for any evaluation purposes.

26.  If DLATS is permitted to continue with the instant acquisition by excluding the KDH offers from consideration, it will have acted improperly by applying a standard that is inapplicable to its stated evaluation criteria to the procurement. Furthermore, inasmuch as the VsVr test may be subject to change and/or elimination, use of data from that test for bid evaluation (or any other evaluation) purposes was improper.

## PRAYER FOR RELIEF

27.  Plaintiff requests that this Court issue a Temporary Restraining Order, a Preliminary Injunction and a Permanent Injunction restraining and enjoining Defendant from awarding a contract or disbursing funds under a contract pursuant to said Solicitation to any entity other than Plaintiff.

28.  It is likely the Plaintiff will succeed on the merits.

29.  The granting of the Injunctive Relief sought will also vindicate the public interest. As alleged above, Plaintiff is thereby being denied the opportunity to compete fairly for a contract under the instant Solicitation. Denial of the requested injunctive relief will lead not only to a significantly higher taxpayer cost for the goods sought, but will also cause significantly later deliveries to be received by the Government and will deny the Government the benefits of competition mandated by the Competition in Contracting Act.

WHEREFORE, KDH prays this Honorable Court that:

1.  The Court enter a Temporary Restraining Order, to be in effect until determination of Plaintiff's Motion for Preliminary Injunction filed concurrently with this Complaint, restraining the Defendants its officers, agents, servants, employees and representatives and all persons acting in concert and participation with them, from awarding a contract or disbursing funds pursuant to the Solicitation to any contractor other than Plaintiff.

2.  The Court enter a Preliminary Injunction enjoining Defendant and its officers, agents, servants, employees, and representatives and all persons acting in concert or participation with them from awarding a contract or disbursing funds pursuant to the Solicitation to any contractor other than Plaintiff.

Respectfully submitted,

Ruth E. Ganister
ROSENTHAL AND GANISTER, LLC
31 Turner Lane
West Chester, PA 19380
(610) 430-6890
(610) 430-6889 (fax)
Roseganist@aol.com

Attorneys for Plaintiff
KDH Defense Systems, Inc.

DATED: August 4, 2016